IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA M. STEPHENS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 09-2394 (JBS) |
| v. | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | |

APPEARANCES:

Brian G. Smith, Esq.
Community Health Law Project, Inc.
900 Haddon Ave., Suite 400
Collingswood, NJ 08108
     Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
     By:  Thomas C. Gray
          Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
     Attorney for Defendant

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This matter comes before the Court pursuant 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration denying the application of Plaintiff Sandra M. Stephens for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of

the Social Security Act.  See 42 U.S.C. §§ 401-34.  Plaintiff
filed for benefits on February 20, 1998, alleging her disability
onset date as April 15, 1996, due to back and ankle pain,
depression, and hearing loss.  (R. at 218.)

At issue in this case is whether there is substantial
evidence in a record that was fully and fairly developed to
support the Administrative Law Judge's determination that
Plaintiff's impairments are not severe enough to qualify her as
disabled under the Social Security Act.  For the reasons
explained below, the Court will remand to the ALJ for the
opportunity to correct errors made with respect to assembling the
evidentiary record and to reevaluate Plaintiff's entitlement to
benefits in light of this decision.

## II.  BACKGROUND

Plaintiff, Ms. Sandra Stephens, was born on July 6, 1963 and
currently lives in Browns Mills, New Jersey.  She was raised by
foster parents.  (R. at 665.)  She has a limited education.  (R.
at 24.)  Ms. Stephens worked as food preparer, server, or cashier
at fast food restaurants or convenient stores from 1986 through
1996.  (R. at 241.)

### A.   Procedural History

Plaintiff filed an initial application for benefits under the Act, which was denied on June 4, 1998.  Plaintiff did not appeal this decision further.  On January 10, 2001, Plaintiff filed her current application alleging disability since April 15, 1996.  (R. at 222.)  The application was denied initially and upon reconsideration.  (R. at 46.)  A hearing was held on June 1, 2004, before ALJ Christopher K. Bullard.  (R. at 222.)  The ALJ issued a decision on July 22, 2004, denying the claim.  (R. at 111-23.)

Plaintiff filed a Request for Review by the Appeals Council, and the Appeals Council vacated the decision and remanded to evaluate Plaintiff's hearing impairment further, instructing the ALJ to permit Plaintiff to submit additional evidence and to complete the administrative record.  (R. at 146-47.)

A hearing on remand was held on February 26, 2007, followed by a supplemental hearing held on July 26, 2007.  On September 20, 2007, the ALJ issued a decision, denying Plaintiff's entitlement again.  (R. at 12-25.)  The Appeals Council denied Plaintiff's Request for review of the decision on May 7, 2009. (R. at 2-4.)  Therefore, the ALJ's denial became the final decision of the Commissioner.  On May 19, 2009, Plaintiff timely filed this action in this Court, seeking review of the Commissioner's determination.

3

**B.    Administrative Law Judge's Findings and Determinations**

The ALJ found that Plaintiff met the insured status requirements of the Act through September 20, 2000.  Plaintiff has not engaged in substantial gainful activity since April 15, 1996, the alleged onset date.  Plaintiff has a limited education and is able to communicate in English.

With respect to her impairments, the ALJ found that Plaintiff has a combination of impairments based on organic mental disorder, status post ankle fracture, herniated spinal discs, depression, personality disorder, hearing loss, substance abuse, and degenerative joint disease.  The ALJ found that these impairments prevented Plaintiff from doing her past relevant work.  However, the ALJ found that Plaintiff's impairments do not meet or medically equal to any of the impairments listed in the regulations.

The ALJ found that Plaintiff retains some residual functional capacity, even though qualified with various limitations.[1]  Considering Plaintiff's age, education, work experience, and residual functional capacity, that ALJ found that

_____

[1] The ALJ qualified Plaintiff's residual functional capacity as "to lift and carry up to ten pounds occasionally and less than ten pounds frequently, sit for six hours (in one hour intervals), stand for two hours (in thirty minute intervals), walk for an hour (in fifteen minute intervals) in an eight hour workday and can never climb ladders, but can occasionally climb stairs, balance, stoop and bend, and can understand, and remember simple instructions and perform simple tasks, and due to her hearing impairment she needs to have fact to face instruction."

4

there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a nut sorter, a stuffer, a food and beverage order clerk.  Based on these findings, the ALJ determined that Plaintiff was not disabled during the relevant period of time, from April 15, 1996 until September 20, 2007, and not entitled to benefits.  (R. at 12-24.)

## III.  DISCUSSION

### A.   Standard of Review

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  20 C.F.R. § 404.1520 (2006).  The analysis is the same for both types of benefits claims that Plaintiff seeks.  See Barnhart v. Thomas, 540 U.S. 20, 21-24 (2003).  If not suffering from a severe impairment, the Plaintiff will be found not disabled.  If the severe impairment meets or equals a listed impairment and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found disabled.  If able to still perform work done in the past despite the severe impairment, the Plaintiff will be found not disabled. Finally, the Commissioner will consider the claimant's ability to perform work, age, education, and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  If incapable,

5

the claimant will be found disabled.  If capable, the claimant will be found not disabled. 20 C.F.R. § 404.1520(b)-(f). Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.

The five-step process involves a shifting burden of proof. Wallace, 722 F.2d at 1153.  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987) (citing Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978)).

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny benefits.  See Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual findings where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It

6

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

To facilitate this Court's review, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975); Boot v. Heckler, 618 F. Supp. 76, 79 (D. Del. 1985). Additionally, the ALJ "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence," Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).

**B. Analysis**

   1. Whether the ALJ Developed the Record Fully and Fairly

One of the most important of the ALJ's responsibilities is "to develop a full and fair record." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). See also Johnson v. Barnhart, 66 Fed. App'x 285, 289 (3d Cir. 2003) (noting ALJ's obligation of fully developing the administrative record). Even though the burden is on the claimant to prove a disability, "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits." Ventura, 55 F.3d at 902. Here, for the reasons now explained, the ALJ did not meet this duty when he refused to allow Plaintiff's live-in boyfriend to testify, and

refused, without explanation, to subpoena critical school records that Plaintiff could not obtain for herself.

a.   Mr. Lore's Testimony

Plaintiff argues that the ALJ improperly refused to allow Mr. Albert Lore, Plaintiff's live-in boyfriend, to testify as to Plaintiff's daily activities as affected by her hearing impairment.  The ALJ explained in his decision that he did not allow Mr. Lore to testify because Plaintiff's testimony was not in question "as to any matter that Mr. Lore could testify to." (R. at 13.)   The Court agrees that when credibility is not in question, an ALJ can refuse to permit a witness to testify if the testimony would merely be used to bolster the Plaintiff's testimony.  However, the ALJ was clearly in error when he stated that Mr. Lore would not have been able to testify to any of the parts of Plaintiff's testimony that the ALJ found not credible.

The ALJ found that Plaintiff's testimony was not credible with respect to "the intensity, persistence, and limiting effects," of her symptoms.  (R. at 22.)   In particular, as to Plaintiff's hearing ability, he doubted her testimony that she sometimes had trouble understanding even face-to-face communication because of her hearing problems (R. at 827-28). This doubt was founded upon the ALJ's observation that, although Plaintiff's doctors reported that they spoke in a louder than

8

normal voice to her, they did not indicate that she did not understand them; it was also based upon the ALJ's personal assessment that Plaintiff had no trouble understanding ordinary speech during the hearing.  (R. at 23.)  Thus, Plaintiff's testimony about her hearing ability was in question.

Mr. Lore would have been able to testify to this issue. Especially in light of the fact that the ALJ's doubts were based only upon the absence of a comment from the doctors and his own limited observation of Plaintiff under one particular circumstance, Mr. Lore could have given material and helpful testimony regarding Plaintiff's ability to understand the speech of others in different day-to-day situations, with different background noise conditions.  Perhaps the ALJ would not have credited this testimony for the same reason he did not credit Plaintiff's testimony, but this is not a sufficient basis to reject the testimony before hearing it.

The ALJ's stated reason for refusing to allow Mr. Lore to testify contradicts the ALJ's later findings.  And it appears to the Court that Mr. Lore's testimony would have been quite probative, and should have been permitted on the aspects of Plaintiff's testimony that the ALJ found not credible.  See Lopez v. Secretary of HHS, 728 F.2d 148, 150 (2d Cir. 1984) ("[I]t was simply unfair to preclude the testimony of a sole corroborative witness as cumulative by assuring appellant that her testimony

9

would be accepted and then rejecting it as incredible."). Because Plaintiff's hearing ability may affect her ability to obtain a job in the national economy, the failure to fully and fairly develop the record on this point justifies remand.  Upon remand, the ALJ must either permit Mr. Lore to testify and decide whether that testimony alters his conclusions with respect to Plaintiff's hearing loss, or else deny the testimony on some other basis that is lawful and consistent with the ALJ's other findings.

b.   School records

Plaintiff argues that the ALJ's refusal to subpoena Plaintiff's school records was improper because these records were necessary to adequately assess whether Plaintiff's impairments met or equaled listing 20.05C (mental retardation). Dr. Vitolo testified as a medical expert at the hearing held on July 26, 2007.  He stated that Plaintiff suffered from borderline intellectual functioning, bipolar disorder, a substance-induced mood disorder, personality disorder, and substance addiction, and that while these impairments were severe, they did not meet or medically equal any of the criteria of the listings.  Dr. Vitolo did not evaluate Plaintiff for listing 20.05C because, in addition to a previous exam that found Plaintiff's intelligence to be normal, there was "no history to establish per the listing

10

that this condition existed prior to age 22 or from birth.  The Plaintiff does not have a history of being in special education." (R. at 784.)

At the end of the hearing on July 26, 2007, Plaintiff's attorney requested a 45-day continuance to obtain Plaintiff's school records so that Dr. Vitolo may reevaluate his assessment. On September 7, 2007, Plaintiff's attorney submitted Plaintiff's high school transcript he obtained during the continuance and requested the ALJ to issue a subpoena to other schools that Plaintiff attended earlier.  The ALJ did not respond to this request and issued his decision two weeks later.

In order to carry out the ALJ's duty to build a full and fair record, the ALJ is granted the authority to issue subpoenas, "when it is reasonably necessary." 20 C.F.R. § 404.950(d)(1). Although the ALJ did not explain his refusal to issue the subpoena, Defendant makes two arguments to show that it was not necessary to subpoena these records.  As a threshold matter, Plaintiff argues that post hoc arguments for why the records were unnecessary are irrelevant, and that the ALJ's failure to give a reason for the denial is grounds for remand.  This proposition regarding post hoc explanations is true with respect to explanations for the ultimate decision made by the ALJ.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  But when the question is whether the ALJ was obligated to further develop the

11

record by discretionary subpoena, the result may be different.
The Court assumes for the sake of argument, because it does not
alter the result, that if the ALJ correctly determined that a
subpoena was not necessary for full presentation of Plaintiff's
case, then it does not require remand if the ALJ did not
explicitly find that no subpoena was necessary.  The Court
therefore assesses whether the post hoc reasons given on appeal
are sufficient to defend the ALJ's decision not to issue a
subpoena.

Defendant first argues that listing 20.05C requires an IQ of
70 or less, and Plaintiff's IQ was measured at 71.  This argument
does not persuade the Court that no subpoena was necessary.  Dr.
Vitolo himself testified that the difference between 70 and 71
was not statistically significant (R. at 783-84); so while the
argument might have merit to show that Plaintiff did not meet the
listing, it is insufficient to show that Plaintiff's
constellation of impairments would not have equaled the listing
regardless of what her school records showed.

Defendant's second argument is that Dr. Karpf's 1998
psychiatric examination estimated Plaintiff's intelligence to be
normal.  But if this were itself sufficient for Dr. Vitolo to
conclude that Plaintiff did not meet listing 20.05C, it would
have been odd for him to repeatedly express that he could not
evaluate that listing without her school records, and for the ALJ

to permit the continuance with respect to those records.
Moreover, since Dr. Karpf did not report any IQ score for
Plaintiff, the fact of the 2007 consultative examination by Dr.
Alban, which actually scored Plaintiff's IQ level, at least
presents conflicting evidence in the record, meaning that
Plaintiff's school background was reasonably necessary to assess
whether Plaintiff met or was equivalent to listing 20.05C.

The ALJ's duty to develop the record made it reasonably
necessary to attempt to obtain the school records for Dr. Vitolo
to review in evaluating Plaintiff's impairment. It may be that,
upon remand, the ALJ will have other reasons for denying the
requested subpoena. If so, the ALJ is free to express those
reasons explicitly and rely upon them, to the extent they differ
from the inadequate post hoc reasons suggested by Defendant upon
this appeal.

c.  Remaining Issues As to the Record

Plaintiff's remaining arguments with respect to the
development of the record are meritless. First, Plaintiff argues
that the ALJ improperly refused to issue interrogatories to Dr.
Vitolo. Plaintiff's attorney requested the ALJ to issue
interrogatories to Dr. Vitolo asking whether Plaintiff's
condition could equal listing 20.05C even if the cause was an
organic mental condition rather than mental retardation. (R. at

13

26, 35.)  The ALJ did not do so.  Dr. Vitolo explicitly testified
that the reason he did not evaluate Plaintiff under listing
12.05C was precisely because he did not have evidence of
Plaintiff's impairment before the age of 22 such that he could
not find mental retardation.  It follows that Dr. Vitolo believed
that evidence of impairment before the age of 22 was necessary
for him to find that Plaintiff equaled listing 20.05C.  Whether
the ALJ should have attempted to get that evidence for Dr. Vitolo
is a separate question, addressed above.  The question on this
point is whether Dr. Vitolo's testimony already answered the
proposed interrogatories.  It did, and therefore the ALJ was
within his discretion to refuse the interrogatories.

    Second, Plaintiff argues that the ALJ improperly refused to
obtain psychiatric consultative evaluation of Plaintiff.
With respect to Plaintiff's mental health and the limitations of
those impairments, the record included the 1998 examination by
Dr. Karpf, who is a psychiatrist, and the 2007 consultative
examination by Dr. Alban, who is a psychologist.  Dr. Alban did
not evaluate Plaintiff's "psychiatric difficulties," but observed
that they were noted in Plaintiff's medical records.  The ALJ
relied on Dr. Karpf's 1998 opinion that Plaintiff's mental status
did not affect her occupational functioning (R. at 16), and he
also relied on treatment records of the Lester Drenk Behavioral
Health Center, which diagnosed Plaintiff with Bipolar disorder

14

and successfully treated her symptoms of insomnia and anxiety (R. at 19).

Plaintiff argues that since the ALJ found that Plaintiff has an "organic mental disorder," "depression, [and] personality disorder," (R. at 15), the ALJ was required to obtain a recent expert opinion regarding how these mental health conditions impacted Plaintiff's ability to work.  Since the 2007 psychological evaluation did not address these issues, and since the last psychiatric evaluation was nearly a decade old, Plaintiff argues that the ALJ was obligated to order a new psychiatric evaluation.

The Court finds that the record was developed fully and fairly on this point.  Unlike the decision to preclude Mr. Lore from testifying in light of the questions as to Plaintiff's credibility, the decision not to hire an additional psychiatrist was within the discretion of the ALJ because there was no clear reason to believe Plaintiff's mental status had changed for the worse since the 1998 evaluation.  Dr. Karpf found that Plaintiff's mental status did not interfere with her occupational functioning, and this assessment was a sufficient basis upon which to determine Plaintiff's residual functional capacity absent some evidence of a significant change in her mental status since 1998.

2.  Substantial Evidence

As noted earlier, this Court reviews the ALJ's factual findings to determine whether they are supported by "substantial evidence," Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001), meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Plaintiff challenges the ALJ's findings in this respect as to a number of points.  The Court finds that the ALJ's opinion with respect to Plaintiff's ability to obtain jobs in the national economy was not supported by substantial evidence because the ALJ improperly ignored aspects of the treating physicians' opinions as to Plaintiff's residual functional capacity, and also failed to present the vocational expert with a hypothetical that adequately reflected Plaintiff's impairments.

a.  Evaluation of treating physicians' opinions

Plaintiff argues that the ALJ improperly refused to consider the opinions of Plaintiff's treating physicians.  The Court agrees, in part.

Dr. Gregory D. Mills, D.P.M., treated Plaintiff's heel and ankle pain since February 10, 2003.  According to Dr. Mills, Plaintiff would be absent from work about twice a month due to her impairment.  (R. at 615-27.)  This estimate is consistent with Dr. Goldstein's assessment.  He indicated that Plaintiff

16

would be absent from work more than three times a month. (R. at 425-32, 679.)

The ALJ explained in his decision that he did not consider Dr. Mills's assessment as to how many days a month the Plaintiff would be absent from work because it was "entirely speculative." (R. at 18.)  But the ALJ does not explain why he thought this aspect of Dr. Mills's opinion was speculative, and there is nothing about the opinion that makes it so self-evidently speculative as to warrant its dismissal with no further explanation.  Moreover, Dr. Goldstein's relatively more recent and severe assessment came to a similar conclusion, and the ALJ offered no reason for rejecting Dr. Goldstein's conclusion (R. at 427, 679).  See Brewster v. Heckler, 786 f.2d 581, 585 (3d Cir. 1986) ("[T]he ALJ must make clear on the record his reason for rejecting the opinion of the treating physician").

When information regarding Plaintiff's absences was raised at the hearing, the vocational expert testified that, if individuals "miss more than one day a month, they are not going to be able to sustain employment." (R. at 887.)  Had the ALJ included the opinions of the treating physician's assessment as to how many days Plaintiff would be absent from work due to her impairments, his testimony likely would have been quite different from what he testified.

17

Plaintiff also argues that the ALJ also erred in not considering Dr. Shinder to be a treating physician because Dr. Shinder had only treated the Plaintiff one time.  The Court disagrees.  The ALJ properly considered Dr. Shinder's opinion to not be the kind of opinion based on a long-term doctor-patient relationship that characterizes an opinion to which more deference is given.  See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (noting the importance of giving weight to medical opinions that "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.") (internal quotation omitted).  The ALJ did not err in giving little weight to the opinion of a physician who treated the applicant only one time.  The ALJ erred, however, in failing to consider the opinions of Plaintiff's treating physicians, Dr. Mills and Dr. Goldstein.

### b.  Questions for Vocational Expert

When determining whether a claimant with complex residual function capacity limitations can find work in the national economy, ALJs often call vocational experts to opine on whether someone with the capacities of the claimant can be expected to find work.  When doing so, an ALJ is not required "to submit to the vocational expert every impairment alleged by a claimaint." Rutherford v. Barnhart,  399 F.3d 546, 554 (3d Cir. 2005).

18

Rather, "the hypotheticals posed must accurately portray the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments as contained in the record." Id. (internal quotation omitted).

At the July 26, 2007 hearing, Mr. Mitchell Schmidt, a Vocational Expert, testified that, considering Plaintiff's age, education, past work experience, and her residual functional capacity, she could perform work as a nut sorter, a stuffer, or a food and beverage order clerk, for each of which thousands of jobs exist in the national economy.  However, this opinion was the result of a flawed hypothetical.

First, in connection with the ALJ's improper consideration of the treating physicians' assessments, the ALJ did not ask the vocational expert whether, if Plaintiff would have to be absent from work 2-3 days per month, she could still obtain the referenced jobs.  When questioned by Plaintiff's attorney, Mr. Schmidt stated that a person would not maintain the job if she would be absent two times a month, would fail to complete tasks 20 percent of the time, or had to lie down over thirty minutes beyond the customary break allowed.  (R. at 800-804.)

Additionally, the ALJ failed to include the correct information regarding Plaintiff's ability to stand for extended periods.  The hypothetical worker in the ALJ's question could stand for up to 30 minutes at a time, for a total of two hours in

19

a day.  But Dr. Goldstein, when presented with a form giving the options of the ability to stand for "about 2 hours," and "less than 2 hours," chose the latter. (R. at 430, 677.)  The ALJ, in his decision, mistakenly quoted Dr. Goldstein's assessment of Plaintiff's capacity to "stand/walk" as "about two hours."  (R. at 17.)  Also, the ALJ did not ask the vocational expert whether Plaintiff's limitations on her ability to deal with work stress, as indicated by Dr. Goldstein, would be a problem.

Upon remand, after the ALJ reevaluates Plaintiff's residual functional capacity based on the other parts of this Opinion, the ALJ should resubmit a hypothetical to a vocational expert that carefully and accurately captures all of Plaintiff's limitations.

### c.  Other Issues

The remaining arguments raised by Plaintiff with respect to the ALJ's findings are meritless.  First, Plaintiff argues that the ALJ failed to properly consider Plaintiff's claims that she failed two grades.  After Dr. Vitolo's testimony, Plaintiff informed her attorney that she recalled failing the Fourth and Eighth grades.  Plaintiff submitted a letter to the ALJ with this information.  The ALJ did not mention this information in his decision, or submit it to Dr. Vitolo for further evaluation.  Plaintiff argues that the ALJ's evaluation of her mental capacity is therefore not supported by substantial evidence.  However, an

20

ALJ need not explicitly discuss every piece of relevant evidence in his decision.  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  What is required is that the ALJ consider all the evidence, and give an opinion from which the Court can assess his reasons and tell why significant probative evidence that would seem to undermine his decision did not undermine it.  Id.  Dr. Vitolo was asked whether evidence that Plaintiff had failed in school would affect his assessment, and he testified that without knowing why Plaintiff failed in school, that evidence was not relevant to his evaluation of her mental condition (R. at 786). Therefore, it was unnecessary for the ALJ to submit this later discovered evidence to Dr. Vitolo and to specifically address it in his determination.

Second, Plaintiff argues that the ALJ failed to properly consider a 1994 MRI.  Plaintiff had an MRI of the lumbar spine on September 30, 1994, which one of her doctors found to be consistent with a bulging or herniated disc (R. at 396-400), and which Plaintiff argues supports her claims of back and leg pain. Plaintiff argues that the ALJ's failure to address this MRI requires remand.  In fact, the ALJ did address the MRI, but found that "subsequent notes reveal that by June 28, 1996, Ms. Stephens reported a significant decrease in pain and did not feel the need to take her pain medication."  (R. at 15, 22.)  Given the wealth of more recent evidence regarding Plaintiff's physical

21

impairments, it was unnecessary for the ALJ to address the 1994
MRI in more detail than to observe that later evidence suggested
the condition was no longer as severe as it once was.

Finally, Plaintiff argues that while the ALJ found
Plaintiff's testimony lacked credibility with respect to the
effects of her symptoms on her daily living, the ALJ did not
identify any particular evidence that he considered in coming to
this conclusion.  Plaintiff is simply incorrect.  The ALJ
explained in detail the aspects of the medical records and his
own observations that led him to doubt Plaintiff' testimony about
the effects of her impairments.  (R. at 22-23.)  Plaintiff
presents the Court with no argument as to the ALJ's actual
reasoning, and appears to overlook it completely.


## IV.  <u>CONCLUSION</u>

For the reasons stated above, this Court shall remand to the
ALJ for further development of the administrative record and for
reconsideration and evaluation of the evidence on Plaintiff's
disability.  The accompanying Order will be entered.


June 21, 2010
_____
Date

Jerome B. Simandle
_____
JEROME B. SIMANDLE
United States District Judge